RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

CODY DEWAYNE KING,

        *Defendant-Appellant.*

No. 25-5195

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:24-cr-00003-1—Curtis L. Collier, District Judge.

Argued: April 29, 2026

Decided and Filed: July 28, 2026

Before: CLAY, McKEAGUE, and NALBANDIAN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Brian Samuelson, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

———————————

**OPINION**

———————————

NALBANDIAN, Circuit Judge.  Police arrested Cody King for dealing a prolific amount of fentanyl and he ended up pleading guilty to a federal drug crime.  Before sentencing, he moved for a downward variance on policy grounds.  The district court denied his motion and sentenced him as a career offender because of his prior state-law convictions.  Now King argues that the career-offender guideline is invalid because the Sentencing Commission lacked the statutory authority to include state-law convictions as career-offender predicates.  He also contends that his sentence is procedurally infirm and substantively unreasonable.  But we find his challenges meritless, so we AFFIRM.

**I.**

King has spent most of his adult life either dealing drugs or serving prison terms for drug dealing.  In 2018, King pleaded guilty to two state-law felony counts of possessing meth for resale.  A Tennessee court sentenced him to eight years in prison, though the state paroled him after five.  So in 2023, King was back out on the street.  And it didn't take long for him to reacquaint himself with his old profession.  The police found this out later that year when they pieced together clues they found in King's abandoned car—his iPhone and his Glock pistol— that led to his arrest.  And when they arrested him, they realized that he was moving volume.  He had a drug ledger, digital scales with white residue, about 1,200 fentanyl pills, about 48 grams of high-purity meth, and roughly three grams of fentanyl powder.  King confessed to possessing about a thousand fentanyl pills and an ounce of meth.  He explained that he consumed about 20 to 30 pills a day and bought about a thousand more "every day or every other day," which maps on to his admission that he sold "400 to 500 fentanyl pills a day."

**II.**

A federal grand jury charged King with possessing a firearm as a felon, possessing with intent to distribute at least five grams of meth, and possessing with intent to distribute at least 40 grams of a fentanyl mixture.  *See* 18 U.S.C. § 922(g); 21 U.S.C. § 841(a)(1), (b)(1)(B).

King struck a plea agreement with the government. Under the agreement, he pleaded guilty to the fentanyl count. In exchange, the government dismissed the other two counts, opted not to file a notice of enhancement under 21 U.S.C. § 851 (given King's prior convictions), and dismissed the section of the indictment referring to "enhanced penalties."

King moved for a variance shortly before his sentencing. His argument combined mitigating circumstances with a policy-based challenge. He pointed to his harsh upbringing, in which his father "[g]roomed" him to sell drugs. R.44, Mot. for Variance, PageID 175. And he highlighted his middling criminal history: two drug convictions shortly after his high school graduation. So he argued that he wasn't the type of career-offender recidivist that Congress and the Commission had in mind.

At sentencing, King sought to escape a Guidelines range of 188 to 235 months' imprisonment, which reflected his career-offender status and the drug quantities he trafficked. He didn't object to the math and conceded that he's "technically a career offender." R.55, Sent'g Tr., PageID 387, 389. But he raised his youth, his disadvantaged upbringing, and the time gap between his old convictions and his current offense as mitigating circumstances. He put it plainly: The career-offender guideline is "aimed at a particular type [of] person," and he's "[not] that guy." *Id.* at PageID 389. So King asked the district court to "take a policy disagreement with the . . . Guidelines." *Id.* at PageID 399–400. He also argued for the first time that the career-offender guideline covers only federal drug priors. He suggested that the Commission exceeded its statutory authority by looping in state offenses. And he noted that the Commission was considering an amendment to correct this purported overreach.

The district court denied King's motion for a downward variance and applied the career-offender guideline. It acknowledged King's difficult upbringing, his "brain development," and the "long interval between [his] initial crimes and this crime," but concluded that the seriousness of his drug trafficking and considerations of just punishment, respect for the law, deterrence, and public safety justified a within-Guidelines sentence. *Id.* at PageID 403–06; *see* 18 U.S.C. § 3553(a). And although the district court recognized its power to "disagree with the [G]uidelines on policy issues," R.55 at PageID 417, it opted to "abide by the law as it exists," *id.* at PageID 408. So it sentenced King to a bottom-of-the-Guidelines 188 months' imprisonment.

**III.**

King appealed.  He raises three challenges to his sentence.  First, he contends that the career-offender guideline shouldn't extend to state-drug priors.  Second, he argues that the district court procedurally erred in sentencing him.  And third, he thinks his sentence is substantively unreasonable.  None of these challenges holds water.  We'll address each in turn.

**A.**

On King's view, the Commission exceeded its statutory authority by issuing the career-offender guideline.  The guideline imposes enhanced penalties on defendants who have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).  "[C]ontrolled substance offense" covers both federal and state offenses. *Id.* § 4B1.2(b).  King thinks that definition exceeds Congress's command in 28 U.S.C. § 994(h). That statute charges the Commission with "assur[ing] that the guidelines specify a sentence . . . at or near the maximum term" for defendants "previously . . . convicted of two or more" offenses "described in" federal drug statutes.  28 U.S.C. § 994(h); *see* 21 U.S.C. §§ 841, 952(a), 955, 959; 46 U.S.C. §§ 70501–08.

According to King, "described in" refers only to the specific federal offenses listed in the statute.  King argues that this language isn't emphatic enough to extend to state offenses—and that statutory context shows that it doesn't.  In other words, King thinks that Congress limited the Commission to designating only those enumerated federal offenses as career-offender predicates. And, consequently, the Commission was not allowed to include state-law prohibitions that applied to conduct that was similar to the conduct prohibited by the federal statutes.

But we disagree.

To start, the parties dispute whether King preserved this argument for review.[1]  King said he did enough by raising his relevant authority and making a general argument for "invalidity" of

---

[1]At oral argument, the government stressed that King waived this argument because he agreed "not to challenge" his career-offender status under the Guidelines.  *See also* R.23, Plea Agreement, PageID 48.  But we decline to interpret that provision of the plea agreement—or hold it against King—because the government itself didn't mention that provision at sentencing or in its appellate brief.

the guideline. R.55 at PageID 400. The government counters that, at sentencing, he didn't challenge the career-offender guideline itself on the theory that Congress authorized enhancements only for federal drug priors. He just packaged that point as one reason why the district court should "take a policy disagreement with the . . . Guidelines." *Id.* ("[W]e're in a circumstance now where I believe it's an appropriate one for the Court to consider based on policy disagreement, particularly when . . . there is a proposed amendment."). And that the reference to the guideline's purported "invalidity" was only in passing. *Id.*

If the government is correct, King would've forfeited his argument. And this would call for plain-error review. But the first prong of plain-error review is that there be an error. *United States v. Bauer*, 82 F.4th 522, 530 (6th Cir. 2023). And we don't see any error—much less a plain one—in the district court's application of the career-offender guideline. So King's purported forfeiture doesn't matter.

In this case, Congress's reference to offenses "described in" federal drug statutes covers state-law offenses which map onto their federal counterparts. *See* 28 U.S.C. § 994(h). We start by noting that we've already read § 994(h) as authorizing the Commission to include state-law priors—albeit in an unpublished opinion. *United States v. Najar*, 2000 WL 799331, at *3 (6th Cir. June 9, 2000). The *Najar* court relied on legislative history and policy considerations to reach the correct result: It read "described in" as "reasonably includ[ing] state convictions for conduct criminalized under the federal statutes mentioned." *Id.*; *see also United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995) ("Congress's mandate directed the Commission to accord career offender treatment to whatever drug-related crimes the Commission believed to be on a par with the [enumerated] offenses." (citation modified)).

*Najar* is instructive, but we won't follow its reasoning to a T. The *Najar* court "defer[red]" to the Commission's interpretation of § 994(h). 2000 WL 799331, at *3. And that doesn't jibe with the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which ended *Chevron* deference. Now, courts "may look to agency interpretations . . . for guidance, but [they] do not defer to the agency." *Seldon v. Garland*, 120 F.4th 527, 531 (6th Cir. 2024) (citation modified). The Commission is no exception. *Rutherford v. United States*, 508 U.S. ___, 146 S. Ct. 1320, 1334 (2026) ("[T]he Commission's policy

statements must be consistent with the governing statute, and courts have a duty to independently interpret the statute and effectuate the will of Congress." (citation modified)); *see also United States v. Bricker*, 135 F.4th 427, 439–41 (6th Cir. 2025) (noting the "duty" to "independently interpret the statute" rather than "defer" to the "Commission's view of a statute" (citation modified)).

So instead of deferring to the Commission, we base our decision today solely on text and context.

Consider the statute's plain text. An "offense" is a "violation of the law; a crime." *Offense*, Black's Law Dictionary (12th ed. 2024). And to "describe" is "[t]o give a verbal account of." *Describe*, Webster's II New Riverside University Dictionary 366 (2d ed. 1984). So read naturally, § 994(h) refers to the *conduct* "described in" federal statutes—not to the statutes themselves. We're mindful, however, that "'describe' takes on different meanings in different contexts," and we don't "interpret . . . words in a vacuum." *Torres v. Lynch*, 578 U.S. 452, 459 (2016) (citation modified). We must therefore read § 994(h) "with reference to the statutory context." *Id.*

And statutory context drives the point home. Consider 18 U.S.C. § 3559(e)(3). There, Congress referred to offenses "described in" two federal sex-offense statutes specifically but carved out acts "not . . . punishable by more than one year in prison" under state law. *Id.* That carve-out wouldn't make sense if "described in" didn't reach underlying conduct—regardless of which sovereign brought the charges. In addition, Congress chooses narrower language when it refers exclusively to federal crimes. *See, e.g.*, 18 U.S.C. §§ 924(e)(2)(A)(i) (referring to "an offense *under* the Controlled Substances Act" (emphasis added)), 1961(1) (referring to acts "indictable under" various federal laws).

We also note that every other circuit to consider the question has reached the same conclusion. And although some of these decisions have relied on deference to the Commission to reach that conclusion, many have decided the issue largely on textual grounds. *See, e.g.*, *United States v. Jones*, 15 F.4th 1288, 1294 (10th Cir. 2021) ("[N]othing in § 994(h) prohibits the Commission from recommending an enhanced sentence for a state-law controlled-substance

offense."); *United States v. Gonsalves*, 121 F.3d 1416, 1419 (11th Cir. 1997) (state convictions are "within the statutory mandate"); *United States v. Hightower*, 25 F.3d 182, 185 (3d Cir. 1994) ("Congress referred to offenses 'described in'—not convictions 'obtained under'—those statutes." (citation modified)); *United States v. Consuegra*, 22 F.3d 788, 790 (8th Cir. 1994) (same); *United States v. Rivera*, 996 F.2d 993, 995–96 (9th Cir. 1993) (same); *United States v. Beasley*, 12 F.3d 280, 283 (1st Cir. 1993) (Breyer, J.) (same). In *Beasley*, for example, then-Judge Breyer explained that a "literal reading of the statute" compels that result. 12 F.3d at 283.

King disagrees, hanging his hat on *United States v. LaBonte*, 520 U.S. 751 (1997). In that case, the Supreme Court rejected the Commission's reading of another phrase in § 994(h). But *LaBonte* isn't relevant. King cites the general proposition that "[t]he Commission has no authority to stray from plain language in 28 U.S.C. § 994." Appellant Br. at 34. That's undoubtedly true. But he doesn't explain *how* the Commission strayed from its mandate in this case—or how *LaBonte* illustrates that point. Indeed, a careful examination of *LaBonte* clarifies that the Commission misread its mandate in that case but not here.

*LaBonte* concerned § 994(h)'s requirement that the Commission craft a guideline "at or near the maximum term authorized" for certain repeat offenders. The Commission read that phrase to refer to the base sentence before statutory repeat-offender enhancements. *LaBonte*, 520 U.S. at 754–55; *see* 21 U.S.C. §§ 841, 851. Why? Because the Commission understood § 994(h) to cover what it viewed as a single category: repeat offenders who received enhancement notices under another statute and those who didn't. *LaBonte*, 520 U.S. at 759; *see* 21 U.S.C. § 851. So, on its view, the relevant "maximum" sentence that could apply to that whole category was the pre-enhancement sentence. The Supreme Court disagreed. It explained that Congress carefully distinguished defendants who received enhancement notices from those who didn't by prescribing a stiffer penalty to the former. *See LaBonte*, 520 U.S. at 759; 21 U.S.C. § 841(b)(1)(C). And it hitched the career-offender mandate to that harsher punishment. *See LaBonte*, 520 U.S. at 759. So the Commission bucked its statutory mandate by failing to craft a guideline that reflected post-enhancement sentences.

This case isn't *LaBonte*. The difference turns on context. The statutory maximum for certain drug traffickers with a *single* qualifying prior drug conviction is 30 years. 21 U.S.C. § 841(b)(1)(C). Congress charged the Commission with crafting a guideline to punish defendants with *two* such convictions. 28 U.S.C. § 994(h). But the Commission's view in *LaBonte* was that Congress didn't align the career-offender guideline with the enhanced-penalty "category" because the government must file an enhancement notice to seek a longer sentence. 520 U.S. at 759. That view exalted a procedural technicality over statutory context. Here, by contrast, reading "described in" to cover state-law priors mirrors Congress's consistent usage. *See, e.g.*, 18 U.S.C. § 3559(e) (referring to offenses "described in" federal sex-offense statutes and carving out certain state offenses); *cf., e.g.*, 18 U.S.C. §§ 924(e)(2)(A)(i) (referring to "an offense under the Controlled Substances Act"), 1961(1) (referring to acts "indictable under" various federal laws).

So the Commission didn't overstep. The career-offender guideline comports with Congress's broad command.[2] *See Williams*, 53 F.3d at 772 (Congress broadly sought to impose "substantial prison terms" on "repeat drug traffickers").

---

[2]To King's credit, 28 U.S.C. § 994(h) doesn't explicitly mention state offenses. And in other statutes in different contexts, when Congress wants "an offense described in" a federal statute to reach comparable state offenses, the language sometimes says so explicitly. *See, e.g.*, 18 U.S.C. § 3559(c)(2)(F) (explaining that for purposes of mandatory life imprisonment, "the term 'serious violent felony' means . . . *a Federal or State offense*, by whatever designation and wherever committed, consisting of murder (*as described in* [18 U.S.C. §] 1111); manslaughter other than involuntary manslaughter (*as described in* [18 U.S.C. §] 1112)," or a number of other crimes "as described in" federal statutes (emphasis added)); 8 U.S.C. § 1101(a)(43) (listing a number of offenses "described in" federal statutes and clarifying that "[t]he term [aggravated felony] applies to an offense *described in* this paragraph whether in violation of *Federal or State law*" (emphasis added)). But even on King's view that 28 U.S.C. § 994(h) reaches only federal offenses, Congress merely instructed the Sentencing Commission to "assure" that these prior federal convictions count toward career-offender status. Congress didn't cabin the Sentencing Commission's general authority to issue guidelines on other prior offenses that should also count toward a defendant's career-offender status. "Section 994(h) provides the *minimum obligation* of the Commission and does not prohibit the inclusion of additional offenses that qualify for [enhanced penalties]." *Williams*, 53 F.3d at 772 (emphasis added) (quoting *United States v. Damerville*, 27 F.3d 254, 257 (7th Cir. 1994)); *see also Jones*, 15 F.4th at 1294 (explaining that § 994(h) "does not represent an exclusive list of crimes for which enhancement under the career offender guidelines may be imposed," and "§ 994(a) . . . gave the Sentencing Commission . . . the authority to determine what constitutes a 'controlled substance offense' for the purpose of enhancing a career offender's sentence" (citation modified)). Simply put, even on King's view, 28 U.S.C. § 994(h) sets the floor of what the Sentencing Commission must include with regard to prior convictions, not a ceiling. So the Sentencing Commission can add state-law offenses as countable prior convictions for career-offender status under its general power to promulgate guidelines. *See* 28 U.S.C. § 994(a).

**B.**

Next, King argues that his sentence isn't procedurally reasonable. He lodged a procedural-reasonableness objection at sentencing, so we review his challenge for an abuse of discretion. *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022). That means our task is to ferret out any "significant procedural error." *United States v. Johnson*, 79 F.4th 684, 705 (6th Cir. 2023) (citation modified). A district court can commit a significant procedural error by "failing to consider the § 3553(a) factors" or "failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007).

On King's view, the district court "committed significant procedural error" because it "refused to consider" his argument for a downward variance based on a proposed amendment[3] that would've limited the guideline to federal priors. Appellant Br. at 48. He thinks that the district court "abdicated its duty to consider relevant § 3553(a) factors animating the proposed amendment." *Id.* The court did so, he posits, because it announced a "categorical rule" against considering the proposed amendment's rationale in its § 3553(a) analysis and erroneously relied on the possibility that any final amendment would have retroactive effect. *Id.* at 48–53.

In other words, King invites us to apply tomorrow's Guidelines today. We decline.

First, it's not clear that the district court even needed to address the proposed amendment. *See, e.g.*, *United States v. Penaloza*, 648 F. App'x 508, 526 n.11 (6th Cir. 2016) (noting that "the proper venue for such an argument" is a motion to modify an imposed prison term under 18 U.S.C. § 3582(c)). But it did so anyway. It predicted that an eventual amendment would have retroactive effect—and sought assurance that it could shorten King's sentence as a matter of discretion regardless.

---

[3]That amendment failed. *See* U.S.S.G. § 4B1.2 (2025). As did another federal-only amendment proposed this year. *See* U.S. Sent'g Comm'n, Proposed Amendments to the Sentencing Guidelines 20 (Jan. 2026) (describing amendment); U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines (no change to the career-offender guideline for 2026).

And second, the district court exhaustively considered the § 3553(a) factors. It homed in on the nature of the offense ("thousands upon thousands . . . have been killed from ingesting fentanyl" and King's crime was "motivated by greed"), King's history ("brain development, violence in the household, and . . . [the] long interval between the initial crimes and this crime"), the offense's severity, as well as considerations of just punishment and respect for the law (trafficking "specifically fentanyl" is a "serious . . . offense"), the need for deterrence ("[o]ther people in Mr. King's situation . . . should look at Mr. King and say, 'Because of what Mr. King got, I will not do it'"), and the need to protect the public ("[o]ne predictor of future crimes is what they've done in the past"). R.55 at PageID 403–06 (citation modified). That's plenty. *See United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018) (a district court needn't "engage in a formulaic point-by-point refutation of a defendant's mitigation arguments" so long as it "conducts a meaningful sentencing hearing and truly considers the defendant's arguments" (citation modified)).

So we don't see any procedural error in King's sentence.

## C.

Finally, King contends that his sentence is substantively unreasonable. We review substantive-reasonableness challenges, which are claims that a sentence is too long, for an abuse of discretion regardless of whether the defendant raised the challenge before the district court. *Gardner*, 32 F.4th at 530; *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

"A sentence will be found to be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (citation modified). Here, because the district court imposed a within-Guidelines sentence, we afford King's sentence a presumption of reasonableness. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

King faults the district court for failing to justify his sentence "wholly independent of the [career-offender] guideline." Appellant Br. at 54. His argument unfolds in two parts. First, he insists that his within-Guidelines sentence isn't presumptively reasonable because the

Commission opposes applying the career-offender guideline to "offenders like [him]." *Id.* at 55. In this vein, he cites a decade-old Career Offender Report published by the Commission which relied on recidivism statistics to recommend that the guideline apply to violent criminals but not to career drug traffickers. And he notes that the Judicial Conference's Criminal Law Committee echoed that view in 2025. Second, he takes the district court to task for purportedly failing to justify his sentence under the § 3553(a) factors.

We disagree.

First, King's bottom-of-the-Guidelines sentence runs headlong into the presumption of reasonableness. We routinely reject efforts to amend the Guidelines by citing crime statistics. *See, e.g.*, *United States v. Hymes*, 19 F.4th 928, 936 (6th Cir. 2021) ("[W]e have never adopted the view that district courts *must* consider national sentencing statistics . . . ."); *United States v. Barcus*, 892 F.3d 228, 235 (6th Cir. 2018) ("[C]hanging the Guidelines to correspond to new empirical data is in the hands of the Commission, not this court."). Ditto for defendants who read the Commission's tea leaves to arrive at their preferred versions of the Guidelines. *See United States v. Cooper*, 739 F.3d 873, 883 (6th Cir. 2014) ("We have never held . . . that a district court must depart downward from a guidelines-recommended sentence" because, though "[t]he career-offender guidelines may be less than perfect, . . . district courts are best positioned . . . to sift through the facts of an individual case and determine an appropriate sentence."); *United States v. Blackman*, 678 F. App'x 400, 400–01 (6th Cir. 2017) (considering the *same* report King cites and concluding that "while sentencing judges may certainly consider arguments based on research compiled by the Commission pursuant to its mission, the recommendations are not law at this point").

And second, we reject King's attempt to repackage a procedural challenge into a substantive one. To the extent King argues that his sentence is substantively unreasonable because the district court skimped on its § 3553(a) analysis, his argument is misplaced. That point sounds in *procedural* reasonableness. *See United States v. Hawkins*, 165 F.4th 442, 449 (6th Cir. 2026) (procedural reasonableness requires "adequate consideration [of] the § 3553(a) factors." (citation modified)). And we already explained that the district court adequately justified its sentence. Relatedly, if King's argument is that the district court

should've balanced the factors differently, that's simply "beyond the scope of [this Court's] review." *Sexton*, 512 F.3d at 332 (quoting *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)).

So we reject King's substantive-reasonableness challenge.

**IV.**

For these reasons, we AFFIRM.